

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KELLY S. BIRCHFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:05-cv-01472-JEO |
| | ) |
| CALHOUN COUNTY, ALABAMA; | ) |
| LARRY D. AMERSON, Individually and | ) |
| as Sheriff of Calhoun County, Alabama; | ) |
| BRUCE BARCLIFT, Individually and | ) |
| in his Official Capacity as Jail Administrator | ) |
| for Calhoun County, Alabama; | ) |
| GEOFFREY BLACKSTOCK, Individually | ) |
| and in his Official Capacity as Deputy | ) |
| Sheriff for Calhoun County, Alabama; | ) |
| MICHAEL DAY, Individually and in his | ) |
| Official Capacity as Deputy Sheriff for | ) |
| Calhoun County, Alabama, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This matter is before the court on the motions for partial dismissal filed by defendants Sheriff Larry D. Amerson and Jail Administrator Bruce Barclift (doc. 10) and Calhoun County, Alabama (doc. 12). The matters have been fully briefed and oral argument was conducted on January 17, 2006. Upon consideration, the court finds that the motions are due to be granted in part and denied in part.

### **BACKGROUND**

#### **Factual Allegations**

The plaintiff alleges in her complaint that she initially talked to defendant Barclift in or about early 2002 concerning "discriminatory treatment on the basis of sex or gender" by her

supervisor. (Complaint at ¶ 11). As a consequence of her complaint, she asserts that the supervisor was transferred. (*Id*.). She further alleges that during the following three years, she "experienced sexual harassment at the hands of male employees of the County and the Sheriff's Department." (*Id*. at ¶ 12). She states that she again complained to Barclift, but he took no action to redress her complaints. (*Id*.).

In or about September, defendant Deputy Sheriff Geoffrey Blackstock called the plaintiff at home and accused her of "sleeping with Barclift." (*Id*. at ¶ 14). At this time, Blackstock was being considered by Amerson for a promotion to Sergeant. (*Id*.). The plaintiff immediately called her supervisor to complain.[1] The supervisor promised that he would call Barclift to report the incident, but she never heard anything further from either Barclift or the supervisor (Jones) regarding the incident. (*Id*.).

Blackstock telephoned the plaintiff fifteen additional times over a weekend. The messages were of a harassing nature and included profanity. (*Id*. at ¶ 15). The following Monday, Barclift called the plaintiff into his office and "expressed his curiosity as to why people would have the idea that they were involved in an affair." (*Id*. at ¶ 16). During their conversation, Barclift referred to Blackstock as "fat, drunk and stupid." (*Id*.). He also "remarked that the male employees 'were just messing with'" the plaintiff. (*Id*.). She played the recordings she had of Blackstock's telephone calls for Barclift. (*Id*.). The plaintiff also alleges that "Barclift apparently instructed Blackstock to apologize to Birchfield, but [he] took no other action to reprimand, counsel or discipline Blackstock." (*Id*.).

"Blackstock sent word that he wanted to talk to [the plaintiff]. However, she refused to

---

[1]The plaintiff refers to the supervisor as "defendant Jones," however, he is not listed as a defendant in the complaint.

meet with [him] alone.  Blackstock then began following [the plaintiff] around the workplace until, about a week later, he caught [her] alone in the parking lot at the County Jail where he confronted her about her having complained to Barclift."  (*Id*. at ¶ 18).  The plaintiff reported the incident to her supervisor who agreed to inform Barclift of the matter.  (*Id*.).  The plaintiff heard nothing further from Barclift.  (*Id*.).

In December 2004, the plaintiff again complained to Barclift "about the crass, vile and offensive language used by male employees in the workplace, some of which was directed to her."  (*Id*. at ¶ 19).  Barclift responded that "she 'needed to be on medication in order to calm down.'"  (*Id*.).

In early January 2005, defendant Deputy Sheriff Michael Day approached the plaintiff outside the Jail and "grabbed Birchfield's breasts while saying 'I've been wanting to do that all day!"  (*Id*. at ¶ 20).  The plaintiff later learned that Day had done the same thing to another female employee on the same day.  According to the plaintiff, nothing was done as a consequence of Day's actions.  (*Id*.).  In fact, he was transferred and promoted shortly thereafter.  (*Id*. at ¶ 21).

At some point, Blackstock was assigned to work in the same office as the plaintiff, "where Blackstock's harassment of her, both verbal and physical, continues unabated as of the date of [the] filing of th[e] complaint."  (*Id*. at ¶ 23).

The plaintiff complained on June 6, 2005, to the new Chief Deputy about the harassment.  (*Id*. at ¶ 24).  He stated that he was unaware of the situation, but he would "look into it."  (*Id*. at ¶ 24).  The new Chief Deputy met with her the following week and asked her what she thought should be done to stop the harassment.  (*Id*. at ¶ 25).

A week after her meeting with the Chief Deputy, Blackstock "began telephoning [the plaintiff] wanting to know 'what is going on?' and 'whether [he] had done anything wrong." (*Id*. at ¶ 26). The plaintiff declined to talk with Blackstock, however, he continued to contact her. (*Id*.).

On June 21, 2005, the plaintiff was moved to Barclift's office. (*Id*. at ¶ 27). Barclift told her that he wanted her "where [he could] keep an eye on what is going on with you." (*Id*.). Her duties were not changed. (*Id*.). No action has been taken against any of the male employees that were harassing the plaintiff. (*Id*.).

In her complaint, the plaintiff alleges that (1) the defendants violated her right "to equal protection of the law, namely, her right to be free from discrimination in public employment based on race and gender" (Claim One), (2) the defendants discriminated against her on the basis of sex and gender in violation of Title VII (Claim Two), (3) the defendants retaliated against her for having engaged in protected conduct, "including making complaints about gender discrimination to her employer, terminating Birchfield's employment was an act of retaliation" (Claim Three), (4) the defendants violated her right of privacy (Claim Four), and (5) defendant Day committed an assault and battery upon Birchfield (Claim Five). (Complaint). She seeks declaratory and injunctive relief, compensatory and punitive damages, and to recover her costs and expenses, including a reasonable attorneys' fee. (*Id*. at pp. 9-10).

### The Defendants' Motions

Defendants Amerson and Barclift have filed a motion for dismissal of certain of the claims against them. (Doc. 10). They assert that (1) to the extent the claims against them are advanced premised on their official capacity, they are protected by absolute immunity; (2) to the

4

extent the claims against them are advanced premised on their official capacity, they are not "persons" within the meaning of § 1983; (3) the harassment claim against Amerson in his individual capacity is not maintainable because an action under Title VII is against the employer; (4) the plaintiff's Fifth Amendment claims are without foundation; (5) the retaliation claim against Amerson and Barclift is not proper because an action under Title VII is against the employer; (6) to the extent that the plaintiff brings her retaliation claim pursuant to the Equal Protection clause it is not viable; (7) the defendants are immune from the invasion of privacy claim in that (a) Amerson is immune under the Alabama Constitution and state law, (b) Barclift is immune as a jailer under Alabama law, and (c) they are protected by Eleventh Amendment immunity under the United States Constitution; and, (8) the plaintiff's claims for punitive damages are precluded by Federal and State law.  The motion is accompanied by a supporting brief.  (Doc. 11 (hereinafter "Individuals' Brief")).

Defendant Calhoun County asserts in its motion to dismiss certain of the plaintiff's claims (doc. 12) that (1) the plaintiff's Fifth Amendment claims are due to be dismissed; (2) the retaliation claim, to the extent it is premised on the Fifth Amendment, is not a viable claim; (3) the invasion of privacy claim is due to be dismissed because the plaintiff failed to file a notice of claim with the Calhoun County Commission before the initiation of this action; and, (4) the claim for punitive damages is precluded.  The motion is accompanied by a brief.  (Doc. 13 (hereinafter "County's Brief")).

The plaintiff has filed a response to the motions.  (Doc. 22 (hereinafter "Response")).

## DISCUSSION

### Standard of Review

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)). Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

### Absolute Immunity

Defendants Amerson and Barclift initially argue that they are protected from § 1983 liability to the extent they are sued in their official capacities because of Eleventh Amendment immunity. (Individuals' Brief at pp. 1-2). The plaintiff does not dispute this assertion, but instead, asserts they are not absolutely immune as to the Title VII claims. (Response at p. 2). Upon consideration, the court finds that Amerson and Barclift are immune from only § 1983 liability to the extent that the plaintiff's claims are brought against them for monetary damages in their official capacities as the sheriff and jail administrator. *See Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1429 (11th Cir. 1998).

## "Persons" Under § 1983

Defendants Amerson and Barclift next argue that to the extent the claims against them are premised on their official capacities, they are not "persons" within the meaning of § 1983. (Individuals' Brief at p. 2). The plaintiff does not dispute this, but instead, asserts that these defendants are subject to Title VII liability as "employers." (Response at p. 2). Upon consideration, the court finds that Amerson and Barclift are not "persons" within the meaning of § 1983 to the extent they are sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). With regard to the issue of whether these defendants are "employers" under Title VII, that matter is best decided at a later juncture after further development of the evidence.[2]

## Individual Liability Under Title VII

Amerson next asserts that the gender discrimination claim against him in his individual capacity is not maintainable because a Title VII action is not permissible against an individual. (Individuals' Brief at p. 3). The plaintiff replies that "Defendants' position that they cannot be sued in their individual capacities under Title VII for retaliation (or otherwise) is correct." (Response at p. 3). Accordingly, the court finds the motion is due to be granted to the extent the complaint asserts a gender discrimination claim against Amerson in his individual capacity. *See Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir. 1995) (individuals cannot be held liable under Title VII).

Amerson and Barclift also assert that the retaliation claim against them is due to be dismissed because a Title VII action for retaliation is not permissible against an individual.

---

[2] The defendants' motion does not appear to present this assertion at this juncture as to either defendant.

(Individuals' Brief at p. 3). In light of the plaintiff's response noted above and applicable authority, the motion is due to be granted on this defense.

### Fifth Amendment Claims

Defendants Amerson, Barclift, and Calhoun County each assert that the plaintiff's Fifth Amendment claims are without foundation. (Individuals' Brief at p. 3 and County Brief at p. 1). The plaintiff's only response is that "[i]t is hornbook law that the Fifth Amendment applies to state actors through the Fourteenth Amendment." (Response at p. 2). The complaint alleges in the retaliation count (Claim Three) that the plaintiff's "conduct [was] protected by Title VII and the Fifth and Fourteenth Amendments. . . ." (Complaint at ¶ 39). In support thereof, she alleges that her employment was terminated in retaliation for protected activities.[3] (*Id*.).

Even construing the plaintiff's allegations in a light most favorable to her, the court cannot find any factual basis for a Fifth Amendment claim in this action. Accordingly, the motion is due to be granted to the extent that she seeks to recover against the defendants under a Fifth Amendment claim.

### Equal Protection Clause and Retaliation

The defendants each assert that the retaliation claim against them in "Claim Three" is due to be dismissed to the extent that it is brought under § 1983 and the Equal Protection Clause. (Individuals' Brief at p. 4). The plaintiff responds that "even though the County is technically correct," the retaliation claim should not be dismissed "because it is subject to a Title VII retaliation claim." (Response at p. 2).

---

[3] The court notes that this allegation is inconsistent with her earlier statement of facts which alleges that she is still employed with the County. (Complaint at ¶ 10). At the hearing on the motion, plaintiff's counsel confirmed that the plaintiff was still employed with the County. He also stated that her retaliation claim was premised on her subsequent treatment by the defendants.

In *Johnson v. Shoney's Inc.*, 2005 WL 20007236 (M.D. Ga. August 18, 2005), the court succinctly summarized the relevant law. It stated:

> . . . . The Court assumes that Plaintiff's federal equal protection claim is grounded in Defendants' alleged retaliatory conduct. However, the right to be free from retaliation is enshrined in the First Amendment right and under Title VII; no such right exists under the Equal Protection Clause. *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997); *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995). Thus, on one hand, if Plaintiff believed his alleged retaliatory dismissal was a result of his gender, that allegation would constitute part of a proper equal protection discrimination claim. *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (citing *Beardsley v. Webb*, 30 F.3d 524, 529-30 (4th Cir. 1994)).
>
> But on the other hand, in this case Plaintiff's claim seems to be a pure or generic retaliation claim, which does not implicate the federal Equal Protection Clause. *Watkins*, 105 F.3d at 1354. Thus, to the extent Plaintiff contends that he was dismissed because of his expressive activity, the claim arises under the First Amendment. *Id*. (citing *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990) (dismissing plaintiff's equal protection claim in retaliation case because it "amounts to no more than a restatement of his first amendment claim"); *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988) (finding that plaintiff's equal protection retaliation claim, based on allegation that "he was treated differently because he exercised his right to free speech," "is best characterized as a mere rewording of [his] First Amendment-retaliation claim")).

*Johnson*, at *3-4. In view of the allegations in the complaint, the plaintiff's response and applicable law, the court finds that the motions are due to be granted to the extent "Claim Three" asserts Equal Protection and retaliation claims against the defendants under § 1983. To the extent that "Claim Three" advances a Title VII retaliation claim against the County, the motion is due to be denied.

**Invasion of Privacy**

The individual defendants next assert that they are immune from the invasion of privacy claim in that (a) Amerson is immune under the Alabama Constitution and state law, (b) Barclift

9

is immune as a jailer under the Alabama Constitution, and (c) they are protected by Eleventh Amendment immunity under the United States Constitution. At the hearing on the motions, counsel for the plaintiff clarified for the court that this claim was not being brought against the County, Amerson, or Barclift. Accordingly, the motion is due to be granted with regard to this claim and these defendants.[4]

### Punitive Damages

Lastly, the defendants assert that punitive damages are precluded by Federal and State law. (Individuals' Brief at p. 6, County Brief at pp. 2-3). In support of this claim, they cite, among other authorities, *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). Therein, the Supreme Court held that punitive damages against a municipality could not be awarded under 42 U.S.C. § 1983. The plaintiff does not dispute this claim.

The defendants are correct that punitive damages are not recoverable under § 1983 or state law against a county or the State of Alabama. *See* ALA. CODE § 6-11-26.[5] They are,

---

[4] The County also asserts that the invasion of privacy claim is due to be dismissed because the plaintiff failed to file a notice of claim with the Calhoun County Commission before the initiation of this action. They note that ALABAMA CODE § 6-5-20 provides that "[a]n action must not be commenced against a county until the claim has been presented to the county commission . . . ." ALA. CODE § 6-5-20. *See also Ford v. Jefferson County*, 774 So. 2d 600, 606 (Ala. Civ. App. 2000) (affirming trial court's grant of summary judgment to county on state law claims when the plaintiff did not file a notice of claim with the county); *Marshall County v. Uptain*, 409 So. 2d 423, 425 (Ala. 1981) ("[a]n action may not be commenced against a county until the claim is presented"). The plaintiff responds, in pertinent part, that she "does not address her state law tort claim for invasion of privacy against the County, only to individual employees in their individual capacities. Beyond state law tort claims, however, no notice to the County is required before filing constitutional law claims against it." (Response at p. 2).

[5] Section 6-11-26 provides:

**No punitive damages awarded against state or agency thereof.**

> Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto.

ALA. CODE § 6-11-26.

however, recoverable for the individual capacity claims against Amerson and Barclift under the remaining § 1983 claims.  *See Gaines v. Choctaw County Com'n*, 242 F. Supp. 2d 1153, 1166 (S.D. Ala. 2003) (punitive damages are permissible in individual capacity claims).  Therefore, this argument of the defendants' motions is correct and the defendants' motions are due to be granted in part and denied in part.

## CONCLUSION

Premised on the foregoing, the defendants' motions are due to be granted in part and denied in part.  The plaintiff's 1983 claim is due to be dismissed as to Amerson and Barclift to the extent it is brought against them in their official capacities as sheriff and jail administrator, respectively, the plaintiff's gender discrimination and retaliation claims are due to be dismissed against Amerson and Barclift in their individual capacities, the plaintiff's Fifth Amendment claims are due to be dismissed, the plaintiff's equal protection and retaliation claims against all three defendants are due to be dismissed to the extent they are advanced under § 1983, the invasion of privacy claim is due to be dismissed as to all three defendants, and the punitive damages claims are due to be dismissed to the extent that they are advanced against the County and Amerson and Barclift in their official capacities.  An appropriate order will be entered.

**DONE**, this the 1st day of February, 2006.

_____
**JOHN E. OTT**
United States Magistrate Judge